UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES OWENS,<br><br>    Petitioner,<br><br>    v.<br><br>INTERNATIONAL BUSINESS MACHINES CORP.,<br><br>    Respondent. | Case No. 22-cv-00901 (APM) |
| JOHN HOLTMAN,<br><br>    Petitioner,<br><br>    v.<br><br>INTERNATIONAL BUSINESS MACHINES CORP.,<br><br>    Respondent. | Case No. 22-cv-00852 (APM) |

**MEMORANDUM OPINION**

**I.**

In these non-consolidated actions, Petitioners ask the court to vacate rulings dismissing as untimely their arbitration requests against Respondent International Business Machines Corporation ("IBM"). The Petitioner in *Owens* is James Owens, a former employee of IBM who worked at the corporation from 1997 to 2020, and the Petitioner in *Holtman* is John Holtman, a former employee of IBM who worked at the corporation from 1983 to 2020.

IBM terminated the Petitioners' employment as part of a layoff in May 2020. Owens was 50 years old at the time and Holtman was 60. Petitioners signed a severance agreement, which offered the employees a severance payment in exchange for a waiver of legal claims, other than claims under the Age Discrimination in Employment Act ("ADEA"), which would need to be pursued in individual arbitration. The arbitration agreement includes a timing provision that states:

> To initiate arbitration, you must submit a written demand for arbitration to the IBM Arbitration Coordinator no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making or, if the claim is one which must first be brought before a government agency, no later than the deadline for the filing of such a claim. If the demand for arbitration is not timely submitted, the claim shall be deemed waived. The filing of a charge or complaint with a government agency or the presentation of a concern through the IBM Open Door Program shall not substitute for or extend the time for submitting a demand for arbitration.

Owens Mot. to Provisionally Seal Documents, ECF No. 4 [hereinafter Owens Mot. to Seal], Ex. 1, ECF No. 4-3 [hereinafter Owens Ex. 1[1]], at 32; Holtman Mot. to Provisionally Seal Documents, ECF No. 3 [hereinafter Holtman Mot. to Seal], Ex. C, ECF No. 3-3 [hereinafter Holtman Ex. C], at 33. This provision gave Petitioners 180 days to demand arbitration of ADEA claims, which mirrors the ADEA limitations period. *See* 42 U.S.C. § 2000e-5(e)(l); 29 U.S.C. § 626(d). Petitioners' last day to timely demand arbitration in writing was on November 17, 2020.

Petitioners attempted to bring an ADEA claim against IBM in arbitration. Petitioners electronically filed their respective arbitration demands with JAMS, the designated alternative dispute forum, on November 17, 2020, and mailed the required written demands to IBM the *following day* on November 18, 2020. IBM moved to dismiss both matters as untimely. The

---

[1] ECF pagination is used for all exhibits.

arbitrator dismissed the matters on November 19, 2021, and denied Petitioners' Motions for Reconsideration on January 6 and January 7, 2022.

Before this court are the parties' cross-motions, with Petitioners seeking to vacate the arbitrator's dismissals and IBM seeking their confirmation. For the reasons that follow, Petitioners' Motions are denied and Respondent's Motions to Confirm Arbitration Awards are granted.

## II.

Petitioners move to vacate the arbitration rulings pursuant to Section 10 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*, which provides narrow grounds for a district court to vacate an arbitrator's decision. Specifically, 9 U.S.C. § 10 provides that "the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration," including, as relevant here, where "the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced"; or "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. §§ 10(a)(3)–(a)(4).

Under the FAA, "judicial review of arbitral awards is extremely limited," *Kurke v. Oscar Gruss & Son, Inc.*, 454 F.3d 350, 354, (D.C. Cir. 2006) (quoting *Teamsters Loc. Union v. United Parcel Serv., Inc.*, 272 F.3d 600, 604 (D.C. Cir. 2001)), and the court "must confirm an arbitration award where some colorable support for the award can be gleaned from the record," *LaPrade v. Kidder, Peabody & Co.*, 94 F. Supp. 2d 2, 4 (D.D.C. 2000). "[C]ourts may vacate an arbitrator's

3

decision only in very unusual circumstances." *Mesa Power Grp., v. Gov't of Can.*, 255 F. Supp. 3d 175, 182 (D.D.C. 2017) (quoting *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013)).

"Section 10 of the FAA provides the FAA's *exclusive* grounds for vacating an award." *Id.* at 183 (quoting *Hall St. Assocs. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008)) (emphasis added) (cleaned up). "'[A]s long as [an honest] arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" *E. Associated Coal Corp. v. United Mine Workers of Am.*, 531 U.S. 57, 62 (2000) (quoting *Paperworkers v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). And under § 10(a)(4) "'it is only when an arbitrator strays from interpretation and application of the agreement and effectively 'dispenses his own brand of industrial justice' that his decision may be unenforceable.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)) (brackets omitted). In sum, "only if 'the arbitrator acts outside the scope of his contractually delegated authority'—issuing an award that 'simply reflects his own notions of economic justice' rather than 'drawing its essence from the contract'— may a court overturn his determination." *Oxford Health*, 569 U.S. at 569 (quoting *E. Associated Coal*, 531 U.S. at 62) (cleaned up). Therefore, "the sole question" is "whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Id.*

Petitioners also argue that an arbitration ruling may be vacated because it manifestly disregards the law. The Supreme Court has said, however, that Sections 10 and 11 "provide the FAA's exclusive grounds for expedited vacatur and modification." *Hall St.*, 552 U.S. at 584. The D.C. Circuit nevertheless has assumed without deciding that "manifest disregard of the law" survives as a separate ground for vacatur. *Affinity Fin. Corp. v. AARP Fin. Inc.*, 468 Fed. Appx.

4

4, 5 (D.C. Cir. 2012) ("Assuming without deciding that the 'manifest disregard of the law' standard still exists . . . "). This court also assumes without deciding that "manifest disregard of the law" is a valid ground for vacatur under the FAA. Assuming the doctrine survives, manifest disregard can only be established if "(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *LaPrade v. Kidder, Peabody & Co.*, 246 F.3d 702, 706 (D.C. Cir. 2001).

### III.

At the outset, the court notes that it does not rule on the parties' cross-motions in a vacuum. Various district courts have considered the same arguments made by the same petitioners' counsel against the same respondent. In each instance, these courts have upheld arbitrators' dismissals on timeliness grounds. *See Smith v. IBM*, No. 21-cv-03856-JPB, 2022 WL 1720140, at *7 (N.D. Ga. May 27, 2022); *Chandler v. IBM*, No. 21-cv-6319-JGK, 2022 WL 2473340, at *6–7 (S.D.N.Y. July 6, 2022); *Lodi v. IBM*, No. 21-cv-6336-JGK, 2022 WL 2669199, at *4 (S.D.N.Y. July 11, 2022); *In re IBM Arb. Agreement Litig.*, No. 21-cv-6296-JMF, 2022 WL 2752618, at * 7–9 (S.D.N.Y. July 14, 2022). This court does so, too.

Illustrative is *Smith v. IBM*, a case involving the same petitioner's counsel and nearly identical facts and arguments at issue here—an arbitration demand served one day late. *See* 2022 WL 1720140 at *2. There, the district court dismissed the petition to vacate and granted IBM's motion to confirm. *Id.* at *7. As to FAA § 10(a)(3), the petitioner in *Smith* argued that the arbitrator had ignored factual evidence including a timely JAMS filing and logistical difficulties brought on by the COVID-19 pandemic, but the district court found that the petitioner's arguments were merely "founded on a disagreement with the Arbitrator's conclusion." *Id.* at *3. Further, the

petitioner asserted that the arbitrator did not assess the burden of the mailing requirement versus the "prevailing standard for conducting business electronically," but the court found that the arbitrator "was not obliged to do so; rather, his duty was to enforce the terms of the Agreement between the parties." *Id.* at *4. As to the petitioner's FAA § 10(a)(4) arguments, including a purported failure to apply equitable tolling, the district court found that the arbitrator had followed the terms of the arbitration agreement in dismissing the petitioner's claim as untimely. *Id.* at *5. Lastly, the court found without merit the arguments related to the enforceability of the agreement's timing provision. *Id.* at *5–7. This court reaches the same conclusions here.

### A. FAA Section 10(a)(3)

Petitioners argue that the arbitrator "failed to consider key facts pertinent to this case, including that Petitioner timely filed his demand with JAMS, that the COVID-19 pandemic made same-day mailing impracticable, and that IBM's requirement that Petitioner mail his demand was unreasonable." Owen's Mot. to Seal, Owens Pet. to Vacate Arb. Award, ECF No. 4-1 [hereinafter Owens Pet.] ¶ 26; *see also* Holtman Mot. to Seal., Holtman Pet. to Vacate Arb. Award, ECF No. 3-1 [hereinafter Holtman Pet.] ¶ 27. Specifically, as to FAA § 10(a)(3), Petitioners claim that the arbitrator failed "to give *any* consideration to the factual circumstances surrounding Petitioner's submission of his arbitration demand in this case." Owen's Mot. to Seal., Owens Mot. to Vacate Arb. Award, ECF No. 4-2 [hereinafter Owens Mot.], at 9; Holtman Mot. to Seal., Holtman Mot. to Vacate Arb. Award, ECF No. 3-2 [hereinafter Holtman Mot.], at 10. But Petitioners are incorrect. The arbitrator in both cases took into account Petitioners' arguments from the briefing, and the arbitrator simply rejected Petitioners' arguments, stating that Petitioners failed to provide "any persuasive arguments . . . even arguably supporting any finding of a legal, factual or equitable nature to excuse the untimely submission of the Demand." Owens Mot. at 11; Holtman Mot. at

11. Further, the arbitrator summarized Petitioners' position regarding the JAMS filing in denying the motions for reconsideration, stating "[Petitioner] argues that the Arbitrator should reconsider the Order of Dismissal for the following reasons . . . (1) [b]ecause [Petitioner] filed his Demand with JAMS on the last permissible day of the 180-day limitations period, dismissal is not required (even though [he] did not mail the Demand to IBM until a day or so later)." Owens Ex. 1 at 132–33; Holtman Ex. C at 133–134. The arbitrator similarly considered and rejected arguments related to the hardships created by the COVID-19 pandemic, stating "[Petitioner] has not provided evidence to show, or articulated a credible basis to believe, that the difficult circumstances he cites — the closure of [Petitioner's] counsel's office due to the pandemic . . . actually prevented mailing of the Demand on November 17, 2020, particularly as that mailing was accomplished a day later on November 18, 2020 (or shortly thereafter)." Owens Ex. 1 at 137; Holtman Ex. C at 138. Further, as in *Smith*, the arbitrator is not obligated to assess the fairness or difficulties of having a mailing requirement instead of permitting electronic filing—the arbitrator's duty is to enforce the terms of the agreement of the parties. *See Smith*, 2022 WL 1720140, at *4. Under such circumstances, the arbitrator plainly did not refuse to hear evidence and is not guilty of misconduct. Petitioners' arguments are mere "disagreement[s] with the Arbitrator's conclusion." *Id.* at *3.

      **B.**      **FAA Section 10(a)(4)**

As to FAA § 10(a)(4), Petitioners argue that the arbitrator "did not follow the procedures set out in IBM's agreement and did not afford Petitioner the rights available to him under the law." Owens Pet. at 9; Holtman Pet. at 11. They argue that the arbitrator "exceeded his authority by failing to apply the remedies available," including equitable tolling. Owens Mot. at 11–12; Holtman Mot. at 12–13; *cf. Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (holding

that the timely filing of a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") is subject to equitable tolling).

Petitioners are again mistaken. First, filing a charge with the EEOC is not at issue here, nor is it a prerequisite for arbitration under the agreement—therefore, *Zipes* is inapposite. And in this case, the arbitrator interpreted the plain language of the arbitration agreement. The agreement prescribes the process for initiating arbitration and the deadline to send the written demand by mail—the Petitioners here did not follow the procedure by the agreed-upon deadline. The arbitrator referenced the contract procedures in finding the claims untimely and did so again in denying the motion for reconsideration. Owens Ex. 1 at 93, 136; Holtman Ex. C at 94, 137. Furthermore, the arbitrator did consider Petitioners' equitable arguments and declined to apply the suggested doctrines, stating that Petitioners had not "provided any persuasive arguments even arguably supporting any finding of a . . . equitable nature to excuse the untimely submission of the Demand." Owens Ex. 1 at 135; Holtman Ex. C at 136. It is clear that the arbitrator did not dispense his own brand of "industrial justice" in interpreting the plain language of the contract language and refusing to deviate from the *agreed-upon* procedure. *See Stolt-Nielsen S.A.*, 559 U.S. at 671.

### C. Enforceability of the Timing Requirement

Petitioners also argue, in the alternative, that even if their claims were untimely, the court should declare unenforceable the provision in IBM's arbitration agreement that purports to waive what is known as the "piggybacking" rule. Owens Mot. at 13–22; Holtman Mot. at 14–22. "The single-file [piggybacking] rule allows an individual plaintiff, who has not filed an EEOC charge, to satisfy the administrative exhaustion requirements under Title VII by relying on a charge filed by another plaintiff." *Campbell v. Nat'l R.R. Passenger Corp.*, 163 F. Supp. 2d 19, 25 (D.D.C. 2001). Petitioners argue that the piggybacking rule is a non-waivable substantive right, and

therefore, cannot be waived by the arbitration agreement's written demand provision. Owens Mot. to Provisionally Seal Documents, ECF No. 19, Owens Reply in Support of Mot. to Vacate Arb. Award, ECF No. 19-1 [hereinafter Owens Reply], at 5–6; Holtman Mot. to Provisionally Seal Documents, ECF No. 18, Holtman Reply in Support of Mot. to Vacate Arb. Award, ECF No. 18-1 [hereinafter Holtman Reply], at 5–8 (citing *Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 521 (6th Cir. 2021) and *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991)). Similarly, Petitioners argue that they could not have waived this right without making requisite disclosures under Older Workers' Benefits Protection Act ("OWBPA"). Owens Mot. at 19–22; Holtman Reply at 6; *see* 29 U.S.C. § 626 (f)(1)(H); 29 C.F.R. § 1625.22(f) (2014); *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 426–427 (1998).

      Petitioners' challenge fails at the outset because it does not fall within any of the exclusive grounds for vacating an arbitration award. In *Smith*, in rejecting an identical argument, the district court held "[t]his alone shows Plaintiff failed to carry her burden" on a motion to vacate. *Smith*, 2022 WL 1720140, at *5. This court agrees. Not only does this challenge not fall within the grounds set by the FAA for vacatur, the argument is also meritless. Here, Petitioners had 180 days to file a claim—the same default filing period provided by the ADEA. They failed to do so and thus waived their ability to file the claim under the terms of the agreement. The piggybacking rule has no role to play in the arbitration context, as it only excuses plaintiffs from the requirement to file an administrative charge with the EEOC—which is not at issue here under an agreement that did not include a charge-filing requirement. *See also Smith*, 2022 WL 1720140, at *6. Petitioners "could have avoided this entire issue" by filing "timely arbitration demands," which would have avoided the "need to resort to a (far-fetched) argument that the piggybacking doctrine saves their untimely demands." *Rusis v. IBM*, 529 F. Supp. 3d 178, 194 n.8 (S.D.N.Y. 2021).

Furthermore, "the purported right to take advantage of the piggybacking rule is not a substantive, non-waivable right protected by the ADEA." *Chandler*, 2022 WL 2473340, at *4; *see Gilmer*, 500 U.S. at 26 ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.") (alterations in original).  The rule is not even a part of the limitations period in the ADEA—it instead pertains to the administrative exhaustion requirement.  Thus, Petitioners' reliance on *Thompson*, which concluded that the limitations period in the ADEA gives rise to a substantive, non-waivable right, 985 F.3d at 521, is irrelevant.  *See Chandler*, 2022 WL 2473340, at *6 (distinguishing *Thompson* and stating, "the Timing Provision did not shorten the ADEA statute of limitations by not adopting the piggybacking rule because that rule is an exhaustion doctrine, not an aspect of the ADEA statute of limitations, and the plaintiff in this case was not required to exhaust any administrative remedies").

Petitioners similarly were not entitled to protections under the OWBPA.  "The OWBPA provides that an individual may not waive any right or claim under [the ADEA] unless the waiver is knowing and voluntary." *Chandler*, 2022 WL 2473340, at *5 (internal quotation marks omitted) (quoting *Estle v. IBM.*, 23 F.4th 210, 213 (2d Cir. 2022)).  "If a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the employer must provide certain information to the individual for the waiver to be knowing and voluntary." *Id.*  Petitioners argue that they could not have waived their right to use the piggybacking rule because IBM did not provide them with the disclosures required under the OWBPA before the they signed the agreement.  However, OWBPA disclosures are only required for waiving substantive rights, and the piggybacking rule is not one of them.  *See Chandler*, 2022

WL 2473340, at *5; *Lodi*, 2022 WL 2669199, at *3–5; *In re IBM Arb. Agreement*, 2022 WL 2752618, at *7–8.

### D. Manifest Disregard of the Law

This court also finds that none of Petitioners' arguments come close to meeting the standard of the arbitrator knowing a legal principle and refusing to apply it or ignoring it altogether. The arbitrator properly construed the timing provision of the agreement by its plain language, and Petitioners cannot blame the arbitrator to undo their untimely request.

### IV.

For the foregoing reasons, Petitioners' Motions to Vacate the Arbitration Awards are denied. Respondent's Motions to Confirm the Arbitration Awards are granted. A final, appealable order accompanies this Memorandum Opinion.

Dated: December 9, 2022

Amit P. Mehta
United States District Court Judge